UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BIENVENIDO I. LUGO MARCHANT,<br>Plaintiff,<br><br>v.<br><br>PETER TSICKRITZIS, KEVIN KINGSTON and UNITED LIQUORS LIMITED,<br>Defendants. | Civil Action No. 05 11317 NMG |

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS

Defendants, Peter Tsickritzis, Kevin Kingston, and United Liquors Limited, submit this memorandum of law in support of their motion for summary judgment pursuant to Fed. R. Civ. P. 56. There are no genuine issues of material fact and Defendants are entitled to judgment on Plaintiff's claims as a matter of law. This memorandum, Defendants' Statement of Material Facts Not In Dispute and the Declarations of Kevin Kingston, Peter Tsickritzis, William Nagle, and Joan Ackerstein are submitted in support of Defendants' motion.

### Introduction

This action arises out of Plaintiff's employment with United Liquors Ltd. ("UL") in 2003, where Plaintiff had worked as a spare employee since 1999. As a spare employee, Plaintiff did not have a guaranteed schedule, position or shift, but would call in daily when he wanted to work to learn if there were positions the following day, which he would then have the option of accepting. Plaintiff worked initially as a driver's helper, assisting truck drivers as they delivered goods to UL customers. (Stmt of Facts, ¶¶ 11, 12, 16)[1] After Plaintiff, with assistance from UL, obtained his commercial driver's license ("CDL") in early 2003, Plaintiff was provided

---

[1] Reference is to Defendants' Statement of Material Facts Not In Dispute and will be referenced as "Stmt of Facts, ¶__."

the opportunity to pick up available driver shifts. (Stmt of Facts, ¶¶ 18-21) However, when Plaintiff failed to perform satisfactorily as a driver, he was assigned to the warehouse, consistent with United Liquor's practice of leaving the driver's helper's positions to those who had not yet obtained their CDL. (Stmt of Facts, ¶¶ 14, 21-23)

Shortly after Plaintiff began working in the UL warehouse as a spare, Plaintiff for the first time made a request for religious accommodation. (Stmt of Facts, ¶¶ 28-29) Defendants accommodated Plaintiff's request. (Stmt of Facts, ¶ 30) Not long thereafter, on or about June 17, 2003, Plaintiff allegedly injured himself at work. (Stmt of Facts, ¶ 33) Approximately one week after the alleged injury and while he was on workers' compensation leave, Plaintiff filed a charge of discrimination with the Massachusetts Commission Against Discrimination ("MCAD") alleging religious, race/color, and national origin discrimination. (Stmt of Facts, ¶ 45) The MCAD dismissed this charge in September 2004. (Stmt of Facts, ¶ 47)

Plaintiff did not return to work at UL, even after his physician indicated in a note dated December 18, 2003, that he was physically able to return to work. (Stmt of Facts, ¶¶ 41, 44) UL invited Plaintiff to return to work, but Plaintiff rejected the offer since he did not believe it was sincere. (Stmt of Facts, ¶¶ 43-44) Subsequently, Plaintiff began working on a per diem basis for another liquor distributor. (Stmt of Facts, ¶ 48)

Plaintiff's *pro se* Complaint appears to contain four claims based on Title VII of the Civil Rights Act of 1964 and Title I of the Americans with Disabilities Act. While not entirely clear, Plaintiff appears to allege that Defendants: (1) denied his request for a religious accommodation; (2) discriminated against him based upon his race/color; (3) harassed him based upon his race/color, national origin, and religion; and (4) engaged in disability or other discrimination when they allegedly refused to bring him back to work prior to December 18, 2003.

Defendants now move for summary judgment on all counts, stating that there are no genuine issues of material fact in dispute and that Plaintiff's claims of failure to accommodate his religious beliefs, discrimination, and harassment fail as a matter of law. In sum, Defendants are entitled to judgment on the religious accommodation claim because they either had no duty to accommodate, did accommodate or would have had an undue hardship if they allowed Plaintiff the accommodation he sought. Defendants are entitled to judgment on the claim of discrimination because they had a legitimate business reason for their decision to offer Plaintiff a position in the warehouse and Plaintiff cannot establish pretext. Defendants are entitled to judgment on the harassment claim because Plaintiff cannot show severe or pervasive conduct, let alone any harassment, and on the disability or other discrimination claim relating to light duty work because Plaintiff failed to exhaust administrative remedies.

## ARGUMENT

### I.  Summary Judgment Standard

Summary judgment's role is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Thus, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When requesting summary judgment, the moving party "must put the ball in play, averring 'an absence of evidence to support the nonmoving party's case.'" Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex, 477 U.S. at 325). The opposing party must then point to some material factual dispute contained in the record to avoid summary judgment.

It is well-settled that the mere existence of <u>some</u> alleged factual dispute will not defeat a properly supported summary judgment motion:

> [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted . . . . In essence . . . the inquiry . . . is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-252 (1986).

Genuine issues of material fact cannot be conjured by a non-moving party who is merely speculating as to what evidence might be produced at trial. On issues where the nonmovant bears the burden of proof, he must present definite, competent evidence to rebut the motion. <u>See Anderson</u>, 477 U.S. at 256-257; <u>Suarez v. Pueblo Int'l, Inc.</u>, 229 F.3d 49, 53 (1st Cir. 2000) ("'As to issues on which the summary judgment target bears the ultimate burden of proof, [he] cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute'"). This evidence "cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial." <u>Mack v. Great Atl. & Pac. Tea Co.</u>, 871 F.2d 179, 181 (1st Cir. 1989).

Summary judgment is often appropriate in employment discrimination cases where the party resisting judgment "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." <u>Feliciano de la Cruz v. El Conquistador Resort and Country Club</u>, 218 F.3d 1, 5 (1st Cir. 2000) (citation omitted).

II. <u>Defendants Are Entitled To Summary Judgment On Plaintiff's Claim To The Extent It Alleges Failure To Provide A Religious Accommodation</u>

Plaintiff is a Jehovah's Witness. (Stmt of Facts, ¶ 8) On or about March 13, 2003, he submitted a written request for accommodation. Plaintiff, claiming that "working on Tuesday

4

and Thursdays is not possible for me because it creates a conflict between my work, cultural habits and beliefs," asked to be excused from work on those days "to attend some religious instruction." Plaintiff also asked to finish a Friday night shift no later than midnight given the Saturday Sabbath. (Stmt of Facts, ¶ 29)

Defendants are entitled to judgment on Plaintiff's religious accommodation claim for three reasons. First, as to the desire to leave work early to attend Bible classes, Plaintiff cannot make the *prima facie* showing required and in any event, UL accommodated him. In addition, allowing Plaintiff to leave Tuesday and Thursday, three or four hours before the shift ended, would have caused an undue burden upon UL as it would have had to fill the shift with another employee, who, in addition to Plaintiff, would have been entitled to eight hours of pay under the collective bargaining agreement with the union. As to the request to leave work on Fridays no later than midnight, UL also accommodated that request.

### A.     Plaintiff Cannot Make a *Prima Facie* Showing Regarding Attendance at Bible Class

To meet his burden and succeed on a religious accommodation claim, Plaintiff must show that: (1) he had a bona fide religious practice that conflicted with an employment requirement; (2) he brought the practice to UL's attention; and (3) the religious practice was the basis for the adverse employment decision. Cloutier v. Costco Wholesale, 311 F.Supp.2d 190, 196 (D. Mass.), aff'd on other grounds, 390 F.3d 126, 133 (1st Cir. 2004) (citing EEOC v. Union Independiente De La Autoridad De Acueductos Y Alcantarillados de Puerto Rico, 279 F.3d 49, 55 (1st Cir. 2002)). If Plaintiff is able to establish a *prima facie* case, the burden then shifts to defendant "to show that it made a reasonable accommodation of the religious practice" or "that any accommodation would result in undue hardship." Cloutier, 311 F.Supp.2d at 196.[2]

---

[2] While the First Circuit affirmed summary judgment for the employer on different grounds in Cloutier v. Costco Wholesale, 390 F.3d 126, 133 (1st Cir. 2004), finding an undue hardship, the principles regarding accommodation in

Plaintiff requested that UL allow him to leave his shift early on Tuesdays and Thursdays to attend Bible classes or allow him not to work those days. (Stmt of Facts, ¶ 29) Plaintiff wanted to attend Bible classes at his Kingdom Hall of Jehovah's Witnesses in Brockton, which ran those classes beginning at 7:00 p.m. on Tuesdays and Thursdays. (Stmt of Facts, ¶¶ 29, 34) However, Plaintiff testified that there were approximately 10 to 11 Jehovah's Witness Kingdom Halls within a 15-mile radius of Brockton, that they all had the same courses, that those courses were given at different times and that, for example, his mother and brother with whom he resided (also Jehovah's Witnesses) attended different classes at a different Kingdom Hall than he did. (Stmt of Facts, ¶¶ 35-36)

As a preliminary matter, Plaintiff cannot establish that his desire to attend religious classes on Tuesday and Thursday evenings was a bona fide religious practice that conflicted with an employment requirement. Instead, Plaintiff's desire to attend classes on those evenings amounted to a mere personal preference, which Defendants were not required to accommodate as Title VII does not mandate an employer or labor organization to accommodate "what amounts to a 'purely personal preference.'" Cloutier, 311 F.Supp.2d at 197 (quoting Union Independiente, 279 F.3d at 55); see also Dachman v. Shalala, 9 Fed. Appx. 186, 192 (4th Cir. 2001) (employee's desire to pick up Challah on Friday afternoon was a personal preference which did not have to be accommodated); Vetter v. Farmland Indus., 120 F.3d 749, 752 (8th Cir. 1997) (reinstating jury verdict in favor of employer where jury could have found desire to live in a particular community was merely matter of personal preference).

Where an employee maintains that religious beliefs require the employee to attend a particular religious event, the employee must prove that the temporal mandate was part of the bona fide religious belief, not merely a personal preference. Tiano v. Dillard Dep't Stores, Inc.,

---

the lower court decision are valid. See Vaughn v. Waffle House, Inc., 263 F.Supp.2d 1075, 1081 (N.D. Texas 2003).

6

139 F.3d 679, 682 (9th Cir. 1998). In Tiano, for example, the Court ruled that an employee's desire to make a religious pilgrimage during a certain time period was a personal preference, not a mandate of her religious belief. Id. at 683. The Court noted that the employee's only evidence of a mandate, her testimony that she felt that she "had to be there at that time," was insufficient to prove that the temporal mandate was part of her religious belief and that several group tours to the pilgrimage site were available. Id. at 682-83; see also Lewis v. Area II Homecare for Senior Citizens, Inc., 397 Mass. 761, 772-73 (1986) (plaintiff failed to introduce sufficient evidence warranting a finding that without an eight-week leave of absence in the summer of 1983 to perform missionary work, she was being required to violate or forego a practice of her religion).

Here, as in Tiano, Plaintiff's testimony confirms that his request to leave work early to attend religious classes on Tuesday and Thursday evenings was a mere personal preference, not a temporal mandate. Plaintiff testified at his deposition that the religious classes he attended on Tuesdays and Thursdays are offered at different times and on different days at various Jehovah's Witness Kingdom Halls, which were plentiful at locations near where he lived. (Stmt of Facts, ¶¶ 35-36). Thus, Plaintiff cannot establish that he had a bona fide religious practice that conflicted with an employment requirement.[3]

### B. In Any Event, UL Accommodated Plaintiff's Request

Even if the Court determined that Plaintiff could establish a *prima facie* case for religious accommodation, UL would be entitled to judgment on this claim because UL provided a reasonable accommodation. See Vaughn, 263 F.Supp.2d at 1083 (summary judgment for employer who offered Sabbath observer position without weekend obligation); Ayele v. Allright Boston Parking, Inc., 1999 U.S. App. LEXIS 25633, *2 (1st Cir. 1999) (*per curiam*), cert.

---

[3] The sincerity of Plaintiff's claim that he needed to attend religious classes on Tuesday and Thursday evenings is undermined by the fact that he did not request accommodation until March 2003, after he was transferred to the warehouse, a job assignment he apparently did not desire. (Stmt of Facts, ¶ 28)

denied, 529 U.S. 1026 (2000) (affirming summary judgment for employer where plaintiff failed to provide evidence that accommodation offered by employer was not reasonable). Title VII does not require an employer to grant an employee's preferred accommodation, but merely a reasonable one. Cloutier, 390 F.3d at 131.

UL advised Plaintiff that as a spare employee, he was not obligated to accept any Tuesday or Thursday job assignments. (Stmt of Facts, ¶ 30) He could simply choose not to work on those days. Such an accommodation was approved in Vaughn, 263 F.Supp.2d at 1083, despite the employee being accommodated with a position which paid less. Likewise, such an accommodation was also approved in Fox v. Lear Corporation, 327 F.Supp.2d 946 (S.D. Ind. 2004), where the employee was permitted not to work overtime on the Sabbath. Even though the employee gave up overtime compensation, the employee's ability "to decline" weekend work without retribution satisfied the obligation to provide a reasonable accommodation. Id. at 952. Additionally, Defendants allowed Plaintiff to leave Friday night shifts at midnight. (Stmt of Facts, ¶ 30)

In sum, even if UL had an obligation to accommodate Plaintiff, it did so. It allowed Plaintiff to leave if his work lasted beyond midnight on Fridays and he was not required to accept Tuesday or Thursday shifts.

### C. Allowing Plaintiff To Work Half His Shift On Tuesdays And Thursdays Would Have Created An Undue Burden

Further, UL was not required to allow Plaintiff to leave early on Tuesdays and Thursdays to make a 7:00 p.m. Bible class, because doing so would have resulted in an undue burden to UL. Had UL allowed Plaintiff to work only half the shift and had UL covered the remainder of the shift with another employee, UL would have been required to pay that employee for a full eight hours. (Stmt of Facts, ¶ 31) Title VII does not require an employer to suffer an undue hardship in granting a religious accommodation, an event which occurs if "it would impose more than a

8

de minimus cost on the employer," such as "having to hire additional employees to accommodate a Sabbath observer." Cloutier, 390 F.3d at 133-134 (employee's request that employer exempt employee from the no-facial-jewelry policy would create an undue hardship since employer would forfeit compliance with policy and lose control over public image); see also Vaughn, 263 F.Supp.2d at 1084 (an undue hardship exists as a matter of law when an employer incurs anything more than a *de minimus* cost to accommodate a religious belief).

Here, based on the undisputed facts about Plaintiff's desire to attend a particular Bible class, UL had no obligation to accommodate. However, it did so when it advised Plaintiff he did not have to work Tuesdays or Thursdays. Finally, allowing Plaintiff to leave early would have created an undue hardship. For all of these reasons judgment should enter for UL on the claim of religious discrimination.

### III. Defendants Are Entitled To Judgment On Plaintiff's Claim To The Extent It Alleges Discriminatory Treatment

Plaintiff also appears to claim that he was demoted from a driver to a warehouse position in 2003 due to his race/color. Defendants are entitled to judgment on Plaintiff's claim because he cannot make the showing required.

To succeed on this claim, Plaintiff must establish a *prima facie* case by showing that: (1) he is a member of a protected class; (2) UL took an adverse employment action against him; (3) he was qualified for the employment he held and was performing satisfactorily; and (4) his position remained open or was filled by a person whose qualifications were similar to his. Douglas v. J.C. Penney Co., Inc., 2007 U.S. App. LEXIS 1019, *6 (1st Cir. Jan. 18, 2007). Plaintiff cannot establish a *prima facie* case because: (1) he was not adequately performing the essential duties of his job as a driver, see Dachman, 9 Fed. Appx. at 189 (employee who was suspended for unsatisfactory behavior could not show adequate performance of duties), and (2)

he cannot offer evidence that other similarly situated drivers who were not of his race were treated differently.

Assuming, arguendo, that Plaintiff could establish a *prima facie* case of discrimination, the burden would shift to UL to articulate a legitimate, nondiscriminatory reason for the employment decision. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003) (the well-established McDonnell Douglas burden shifting framework is applied when evaluating discrimination claims under Title VII). UL's burden is merely a burden of production as the burden of persuasion remains with Plaintiff. Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 19 n. 1 (1st Cir. 1999). The First Circuit has explained the employer's burden as follows:

> The defendant's burden to "articulate" a legitimate reason is *not* a burden to persuade the court that he was in fact motivated by that reason and not by a discriminatory one. "Rather, it is a burden of *production – i.e.*, a burden to *articulate or state* a valid reason.". . . The defendant can accomplish this by introducing "admissible evidence which would allow the trier of facts rationally to conclude that the employment decision had not been motivated by a discriminatory animus."

Johnson v. Allyn & Bacon, Inc., 731 F.2d 64, 70 (1st Cir.), cert. denied, 469 U.S. 1018 (1984).

Here, UL articulated a legitimate reason for not continuing Plaintiff as a driver on regular shifts. After he obtained his CDL with the support and assistance of UL and its employees, UL assigned Plaintiff to available shifts working as a driver. (Pl. Tr. Vol. I, pp. 135-36, 149-50; Stmt of Facts, ¶ 20) However, UL received a number of complaints regarding late deliveries by Plaintiff. (Pl. Tr. Vol. I, p. 145; Stmt of Facts, ¶ 21) In addition, Plaintiff was involved in two accidents while working as a driver. (Pl. Tr. Vol. I, pp. 142-45; Stmt of Facts, ¶¶ 22-24) In one of the accidents, Plaintiff hit a parked car with a UL truck. (Stmt of Facts, ¶ 22) In the other accident, a garage door closed on a UL truck while Plaintiff was driving it out of a hotel garage. (Stmt of Facts, ¶ 24) Based on Plaintiff's poor performance as a driver, UL determined that it

would no longer assign Plaintiff to regular shifts as a driver. (Stmt of Facts, ¶ 23) Instead, UL offered Plaintiff available shifts in the warehouse. (Stmt of Facts, ¶ 23) This was consistent with UL's policy of not allowing employees to drive regular shifts who were not successful and of reserving the driver's helper positions for those employees who did not yet have a CDL and wanted to learn the driver position. (Stmt of Facts, ¶ 14) Summary judgment for the employer is appropriate where the employer establishes a legitimate reason for the action at issue. See Douglas, 2007 U.S. App. LEXIS 1019 at *7-8 (four years of declining sales and mediocre job performance sufficient justification for termination); Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 174 (1st Cir. 2003) (persistent tardiness and frequent absences were legitimate reason for termination).

Once an employer articulates a legitimate, nondiscriminatory reason for an adverse employment decision, the burden shifts back to plaintiff to prove that the reasons advanced by the employer are mere pretext for unlawful discrimination. Douglas, 2007 U.S. App. LEXIS 1019 at *6; Rodriguez-Cuervos, 181 F.3d at 19. "To meet this burden, the plaintiff must prove not only that the reason articulated by the employer was a sham, but also that its true reason was plaintiff's [protected category]." Rodriguez-Cuervos, 181 F.3d at 19. A plaintiff in a discrimination suit bears the "burden of proving that his [status in a protected category] was the determinative fact" in the adverse action and that the adverse action would not have been taken but for that status. Freeman v. Package Machinery Co., 865 F.2d 1331, 1335 (1st Cir. 1988). The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Rodriguez-Cuervos, 181 F.3d at 19 n. 1.

Here, Plaintiff has no evidence of pretext. Plaintiff cites in his Complaint that other drivers were hired who were white (Complaint, p. 4), but since this information came to him

only through warehouse workers (Pl. Tr. Vol. I, p. 148), he has no personal knowledge and his allegation is not admissible. See Fed. R. Civ. P. 56(e). More significantly, the admissible evidence reflects only the hiring of experienced drivers, employees who are therefore not similarly situated.[4] (Stmt of Facts, ¶ 26) Since Plaintiff has no evidence of pretext, summary judgment should enter for UL on the discrimination claim. Douglas, 2007 U.S. App. LEXIS 1019 at *8 (affirming summary judgment where there is no evidence of pretext; plaintiff could not overcome evidence of poor performance evaluations and failure to reach sales targets); Benoit, 331 F.3d at 174 (affirming summary judgment for employer where there is no evidence of pretext; plaintiff, who had persistent tardiness and frequent absence issues, could not show that employer failed to discharge other employees with same performance issues).

## IV. Defendants Are Entitled To Judgment On Plaintiff's Complaint To The Extent It Alleges Harassment

Plaintiff's Complaint contains allegations that he was subjected to harassment based on his national origin, his race/color and his religion. UL is entitled to judgment on these claims because Plaintiff cannot make the showing required. To establish a *prima facie* case of a hostile work environment, Plaintiff would need to establish that he was harassed due to his race, national origin or religion, that the harassment was sufficiently severe or pervasive as to create an abusive environment and that the objectionable conduct was both objectively and subjectively hostile. Douglas v. J.C. Penney Co., Inc., 2007 U.S. App. LEXIS 1019 at *11 (1st Cir. 2007). In contrast to the required severe and pervasive standard, Plaintiff here takes three statements and gives them a tortuous construction in an unsuccessful effort to demonstrate harassment.

---

[4] It is fundamental that "'[a] claim of disparate treatment based on comparative evidence must rest on proof that the proposed analogue is similarly situated in all respects.'" Rodriguez-Cuervos, 181 F.3d at 21 (citations omitted) (plaintiff could not compare himself to an employee who was evaluated by a different supervisor over different period of time and for a different store). Any newly hired drivers were not similar to Plaintiff as Plaintiff had already been given an opportunity to drive for UL, and had performed poorly. Further, Plaintiff admitted at his deposition that he "heard that [the new drivers] were experienced, and [he] believe[d] they [were] experienced people." (Pl. Tr. Vol. II, pp. 85-86) Thus, Plaintiff's attempt to compare himself with newly hired drivers fails.

12

Plaintiff's claim fails because he cannot demonstrate any harassing comments, let alone severe, pervasive and objectively offensive comments.

### A. Plaintiff's Allegation That Defendant Kingston Made A Harassing Comment Fails Because It is Contradicted By Plaintiff's Own Deposition Testimony

The first of the three statements upon which Plaintiff relies for his claim of harassment is one allegedly made by Kevin Kingston when Plaintiff was arguing about a delivery stop Plaintiff failed to make. Plaintiff claims that Defendant Kingston made a statement, "not to talk like that," and that the statement constitutes harassment based on national origin or on an alleged stutter. (Complaint, ¶ 2) Even assuming the statement was made, Plaintiff admits in his Complaint and testified at his deposition that he did not understand the basis for Kingston's alleged comment. (Complaint, ¶ 2; Pl. Tr. Vol. I, pp. 137-39) Plaintiff testified that he and Kingston were disagreeing about Plaintiff's skipping a stop while working as a driver (Pl. Tr. Vol. I, pp. 136, 140-41), and that the disagreement was occurring in front of other employees. Plaintiff said Kingston "didn't like backtalk," and after Plaintiff gave Kingston his view on the disagreement they were having and the reason he believed it appropriate to skip a stop, Kingston said "You can't talk like that." (Pl. Tr. Vol. I, pp. 136, 141) Plaintiff testified that he did not know the reason Kingston allegedly made this comment:

> A: ... Mr. Kingston added, "And you cannot talk like that" in front of people at the office. And everybody at the office looked like whoa, they look at me like uh-oh, Ben is in trouble.
>
> And I ask him, "What do you mean by 'You cannot talk like that?'" Because people know what's a national origin accent, people know that when there were some stuttering, so what did he mean "Don't talk like that"? Did he mean stop being a stutterer or stop having a national origin accent? He didn't specify, so for that reason I say it's the two, he waive one, he waive two.

13

(Pl. Tr. Vol. I, pp. 138-39) Based on Plaintiff's testimony, the alleged statement, even if made, is not evidence of harassment. Indeed, Plaintiff claims he did not even know what the comment meant. Under these circumstances, this comment is insufficient to constitute offensive conduct.

In <u>Smith v. Country of Culpepper</u>, 1998 U.S. Dist. LEXIS 21051, 3-4 (W.D. Va), <u>aff'd</u> 191 F.3d 448 (4th Cir. 1999), <u>cert</u>. <u>denied</u>, 528 U.S. 1157 (2000), for example, a plaintiff claimed her supervisor sexually harassed her when he said that her salary had been budgeted and she could "pay him back" by taking a "road trip" with him, interpreting the comment as a sexual proposition. The Court ruled that the comment was too ambiguous to support a claim of harassment and that even if the comment was sexually suggestive, it was merely a single utterance. <u>Id.</u> at 14-17; <u>see also</u> <u>DiCenso v. Cisneros</u>, 96 F.3d 1004, 1006 (7th Cir. 1996) (alleged statement from landlord that tenant could take care of rent in other ways if short funds too "vague" and "innocuous" to support harassment claim). A similar ruling should be made on the comment alleged here, that it is too vague to support any claim.

    B.    **<u>Plaintiff Also Cannot Show An Inappropriate Religious Comment</u>**

The second statement on which Plaintiff relies for a claim of religious harassment fails for the same reason. Plaintiff alleges that Mr. Kingston asked Plaintiff if he wanted to be fired for practicing his beliefs. (Complaint, ¶ 3) Once again, Plaintiff is taking a statement, even if said, completely out of context. As he testified, the statement allegedly was made to him after he left work without permission:

    Q:    Let me see if I understand this; before you have this letter to Kevin Kingston on March 12, on some occasions, when you were working in the warehouse, on Tuesday or Thursday, you simply left early before the end of the shift?

    A:    I believe so.

    Q:    And isn't it the case that at some point Mr. Kingston learned about that?

> A: Yes.
>
> Q: Isn't it in that context that he said "are you going to get fired for your beliefs" because you were leaving early without permission?
>
> A: Well, I'm not a slave; I don't have to ask permission to my master at that time. . . .
>
> Q: But didn't Kevin Kingston tell you that if you left without permission, you are going to be fired?
>
> A: I don't believe Kevin Kingston is about the history of Massachusetts, like Pilgrims.
>
> Q: The question is didn't Kevin Kingston tell you if you left without permission, you were going to be fired?
>
> A: He said I could be fired for leaving to go and pray.

(Pl. Tr. Vol. II, pp. 80-81) Again, Plaintiff cannot make a harassment claim on a vague comment such as this, which merely suggest that Plaintiff may be fired for leaving early without permission.

    C.    <u>**Plaintiff's Allegation That He Was Harassed Based On His National Origin Should Be Dismissed**</u>

Finally, Plaintiff's third allegedly harassing statement was made after he was out of work due to an injury. (Complaint, ¶ 6) At that time, when Plaintiff had been out of work on a workers' compensation leave for two months, he went to UL to drop off some papers. Plaintiff testified that when he asked a substitute receptionist for a job application in Spanish for his neighbor, the receptionist asked someone, "Do you think Spanish people need to speak English to work here?" (Pl. Tr. Vol. II, pp. 32, 62-63)

As with the other two alleged comments, this comment by the receptionist is too vague and isolated to constitute harassment. To establish a harassment claim under Title VII, Plaintiff must demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive" to alter the conditions of the victim's

employment. Kosereis v. State of Rhode Island, 331 F.3d 207, 215 (1st Cir. 2003). There, summary judgment was awarded to the employer on a harassment claim because reprimands and name calling were not sufficient to create a hostile work environment. Id. at 217; see also Shramban v. Aetna, 262 F.Supp.2d 531, 536 (E.D. Pa. 2003) (mimicking plaintiff's accent and referring to plaintiff's "Russki way" or "Moldavian way" were insufficient to prove national origin discrimination); Cruz v. Standard Motor Prods., Inc., 1990 U.S. Dist. LEXIS 8459, *11 (D. Kan. 1990) (court found that even occasional ethnic slurs did not rise to the level required for a violation of Title VII).

Plaintiff has taken some vague comments and claimed unlawful harassment. UL is entitled to judgment on this claim because Plaintiff cannot show the severe, pervasive and objectively offensive conduct required.

### V.   UL Is Entitled To Judgment On Plaintiff's Disability And Light Duty Claim

Plaintiff appears to claim he was denied light duty work and medical treatment after he suffered an injury at work in violation of the ADA or that the denial of light duty work resulted from discrimination based on his race. Those claims fail for two reasons.

As a preliminary matter, these claims are barred because they are beyond the scope of the administrative charge filed by Plaintiff. Sekamate v. Newton Wellesley Hosp., 2002 U.S. Dist. LEXIS 18687, *14 (D. Mass. Sept. 3, 2002) (citing Bonilla v. Muebles J.J. Alvarez, Inc. 194 F.3d 275, 277 (1st Cir. 1999)) (in order to bring an action in federal court for violation of the ADA, a plaintiff must first exhaust his administrative remedies by filing a claim with the EEOC or a comparable state agency). Plaintiff's administrative charge alleged discrimination based on his religion, national origin, and race/color. (Stmt of Facts, ¶ 45) Plaintiff later filed an amendment to his administrative charge, claiming that he was harassed by a receptionist and Defendant Tsickritzis on August 26, 2003. (Stmt of Facts, ¶ 46) Plaintiff did not assert a

disability claim in his administrative charge or the amendment to his charge. (Stmt of Facts, ¶¶ 45-46)  Nor did he make any claim of a denial of light duty work. The MCAD dismissal of Plaintiff's charge against UL makes clear that it did not address any allegations of disability discrimination or of a discriminatory denial of light duty work. (Stmt of Facts, ¶ 47).

Failure to exhaust administrative remedies is fatal. See Sekamate, 2002 U.S. Dist. LEXIS 18687 at *16 (citing Bonilla, 194 F.3d at 277)  The filing requirement has a dual purpose: (1) to give the relevant agency an opportunity to investigate and conciliate the claim; and (2) to give a defendant fair notice of a potential lawsuit. Luciano v. Coca-Cola Enters., 307 F.Supp.2d 308, 323 (D. Mass. 2004).  Those purposes

> would be frustrated if the employee were permitted to allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action. Consequently, [the First Circuit has] stated that, in employment discrimination cases, "the scope of the civil complaint is ... limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge."

Luciano, 307 F.Supp.2d at 323 (quoting Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996)).

"[T]he focus is not on the 'literary exactitude' with which a plaintiff sets out the facts and theories upon which her claims are based, but on the direction and scope of the investigation that could be expected to flow from the allegations contained in the charge." Luciano, 307 F.Supp.2d at 323; see also Kenney v. MML Investors Services, Inc., 266 F.Supp.2d 239, 246 (D. Mass. 2003) (finding that a number of plaintiff's claims were jurisdictionally barred for failure to exhaust where the EEOC dismissal reveals that the scope of the investigation was limited to the allegations included in the verified charge). Pro se plaintiffs, like other plaintiffs, are required to describe the essential nature of the claim and to identify the core facts on which it rests. Lattimore, 99 F.3d at 464. Plaintiffs are not entitled to "make a specific claim based on one set

of facts and, later, assert an entirely different claim based on a different and unrelated set of facts." Lattimore, 99 F.3d at 464 (dismissing pro se plaintiff's harassment claims because his administrative charge made no mention of any incidents of harassment).[5]

Here, neither the MCAD charge nor the amendment allege disability discrimination or the discriminatory denial of light duty work. Further, the MCAD dismissal of Plaintiff's charge indicates that the scope of its investigation was limited to Plaintiff's claims of race/color, national origin and religious discrimination. (Stmt of Facts, ¶ 47) UL is entitled to judgment on the grounds that this claim is beyond the scope of Plaintiff's MCAD charge. See Sekamate, 2002 U.S. Dist. LEXIS 18687 at *16 (finding that plaintiff did not exhaust his claim of disability discrimination, having failed to raise the charge to either the MCAD or the EEOC).

Even if the Court were considering the claim made in the complaint, that UL failed to give Plaintiff light duty work, UL would be entitled to judgment on that claim. The evidence demonstrates that Plaintiff was not excused to return to work until December 18, 2003 and that he received workers' compensation benefits for the period June 17, 2003 to December 18, 2003. Further, Plaintiff testified that he was considered totally disabled through December 18, 2003. (Stmt of Facts, ¶ 42) Finally, when he did seek to return to work in January 2004, Plaintiff did not do so despite the invitation to return which UL extended. (Stmt of Facts, ¶¶ 43-44) The fact is that Plaintiff cannot demonstrate disability discrimination or a denial of light duty even had the claims been asserted in a charge.

---

[5] The Court in Sekamate, 2002 U.S. Dist. LEXIS 18687, *14 (D. Mass. Sept. 3, 2002) considered this issue and granted the employer summary judgment on a disability claim. There, a *pro se* litigant filed a charge of discrimination based on race and national origin discrimination and retaliation but did not mention disability. The Court noted that the purpose of the exhaustion requirement is to provide the employer prompt notice of the claim and to allow for early conciliation, the agency must be informed of the complaint during the period of investigation, there was no evidence the agency investigated allegations of disability discrimination; those allegations did not come within the scope of the investigation and thus, that the employee did not exhaust administrative remedies as to that claim. Id. at 15-16. The Court also noted that even a *pro se* complainant is required to "describe the essential nature" of the claim and the "core facts" on which it rests. Id. at 15.

## VI. The Individual Defendants Are Entitled To Judgment

In addition to naming UL as a defendant, Plaintiff also names as defendants two individuals, Peter Tsickritzis and Kevin Kingston, UL's Director of Operations and Operations Manager, respectively. The basis of the claim against each seems to be alleged statements described in paragraphs 2, 3 and 5 of the Complaint. While these allegations are insufficient to establish liability, the individual defendants are entitled to judgment for the additional reason that there is no individual liability under Title VII or the ADA.

It is well-settled that Title VII of the Civil Rights Act of 1964 does not permit the imposition of personal liability against individual managers or employees. See Healy v. Henderson, 275 F.Supp.2d 40, 44-45 (D. Mass. 2003) (joining the eleven other circuit courts which have concluded that Congress did not intend to impose individual liability upon agents of an employer); Delelegne v. Kinney System, Inc., 2004 U.S. Dist. LEXIS 10565, n.18 (D. Mass. June 10, 2004) (dismissing Title VII claims against individual defendants).[6] Likewise, there is no individual liability under the ADA. Bourbeau v. City of Chicopee, 445 F.Supp.2d 106, 111 (D. Mass. 2006) (citing Wright v. CompUSA, Inc., 183 F.Supp.2d 308, 310 (D. Mass. 2001)). As the Healy court reasoned, "the phrase 'and any agent of such a person,' was intended by Congress to establish traditional respondeat superior liability. That is, 'the phrase . . . simply means that an employer is liable for acts of those employees acting within the scope of their employment, but does not extend liability beyond the employer to the individual harasser.'" Healy, 275 F.Supp.2d at 45.

The Complaint does not allege viable claims against the individual defendants. For that reason, they are entitled to judgment on the Complaint in its entirety.

---

[6] The First Circuit Court of Appeals has yet to address this issue.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion for Summary Judgment and enter judgment for Defendants on Plaintiff's Complaint.

Respectfully submitted,

UNITED LIQUORS LIMITED, PETER TSICKRITZIS and KEVIN KINGSTON,

/s/ Joan Ackerstein
Joan Ackerstein (BBO# 348220)
Heather Stepler (BBO# 654269)
JACKSON LEWIS LLP
75 Park Plaza, 4th Floor
Boston, Massachusetts 02116
(617) 367-0025; Fax: (617) 367-2155

Dated: February 7, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2007, this document was served upon Plaintiff, Bienvenido I. Lugo Marchant, 19 Grove Street, Brockton, MA  02301, by first class mail, postage prepaid.

/s/ Heather L. Stepler
Jackson Lewis LLP

20