UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BIENVENIDO I. LUGO MARCHANT,
             Plaintiff,

v.

PETER TSICKRITZIS, KEVIN
KINGSTON and UNITED LIQUORS
LIMITED,
             Defendants.

Civil Action No. 05 11317 NMG

## DECLARATION OF PETER TSICKRITZIS

I, Peter Tsickritzis, on oath, depose and state as follows:

1.     I am the Director of Operations at United Liquors Ltd. ("UL"). I have worked for UL since 1970 and have held the position of Operations Manager since 1989. I am a resident of Bourne, Massachusetts.

### UL Operations

2.     UL is a liquor, beer, and wine distributor in Massachusetts and its headquarters is located at 175 Campanelli Drive, Braintree, MA 02185. UL serves over 8,000 accounts, including 6,000 on-premise restaurants, bars and hotels and over 2,500 liquor stores. UL employs workers in the warehouse and road divisions who prepare shipments and deliver them to customers. In 2003, UL had approximately 200 employees in those divisions. In my role as Director of Operations, I oversee all operations issues.

3.     Through my position as Director of Operations, I became familiar with Plaintiff, Bienvenido Lugo Marchant, during the time he worked for UL as a spare employee.

4.     UL has a diverse workforce and its spare employees are no exception to that. At any one time, UL has many spare employees, some active and some less so. We identified active spare employees in August 2004, at the time the Massachusetts Commission Against Discrimination ("MCAD") was considering Plaintiff's claim and asked us for statistical

information.  At that time, we had 49 active spare employees, including 25 employees who were Caucasian, 14 who were African-American, nine (9) who were Hispanic, and one (1) who was Asian.[1]  As of January 31, 2007, UL has 40 active spare employees, including 23 who are Caucasian, seven (7) who are African American, one (1) who is Hispanic, four (4) who are Asian, and six (6) who are Cape Verdean.

5.      In or about the spring of 2003, UL had a need for additional drivers.  We were able to hire 10 drivers from a competitor with the assistance of the General Teamsters, Chauffeurs, Warehousemen, and Helpers of Brockton and Vicinity, Local Union No. 653 (the "Union") and did so.  These drivers previously worked as delivery truck drivers, thus, they were experienced drivers.

6.      In or about June 2003, Plaintiff reported to UL that he suffered an injury while working.  (See Exhibit A, First Report of Injury)  Subsequently, Plaintiff went out on leave.

### Plaintiff's Possible Return To Work In 2004

7.      Thereafter, in or about January 2004, I met with Plaintiff to discuss his return to UL.  To my knowledge, he had not made any effort to return to work prior to that.  The other attendees at the meeting were Kathleen Mansfield, UL's Vice President, Human Resources, and a representative from the Union, which represents UL's warehouse and road division employees.

8.      During this meeting, I explained to Plaintiff that he was welcome to return to UL as a spare employee and that he could work available second or third shift job assignments in UL's warehouse.  This was the position that Plaintiff worked prior to his work-related injury.

9.      Plaintiff indicated that he did not want to return to UL's warehouse and, instead, wanted to return to work as a driver.  I explained to Plaintiff that he could not return to work as a driver due to his poor performance during the time that UL assigned him to available driver job assignments.

---

[1] Due to the nature of employment of spare employees, some spare employees work for UL for short periods of time, such as one day or one week.  Accordingly, UL employed hundreds of spare employees in 2003 and 2004.

10.     Subsequently, I received letters from Plaintiff dated February 27, 2004 and March 9, 2004.  In these letters, Plaintiff indicated that he wanted to return to UL, but wanted to work "a Maintenance shift or one that does not cause any conflict with what we have under investigation at the MCAD."  (See Exhibits B and C, letters from Plaintiff dated February 27, 2004 and March 9, 2004 respectively)

11.     Shortly thereafter, I responded to Plaintiff in writing.  In my letter, I reminded Plaintiff that he "may return to work as a spare employee but [UL] cannot guarantee [him] a particular position or shift on a daily basis."  I also informed Plaintiff that I did not believe that his returning to work would cause any conflict with his MCAD charge.  (See Exhibit D, letter to Plaintiff)

12.     To my knowledge, Plaintiff never accepted any spare employee warehouse assignments after his injury in June 2003.

### Hourly Wages For Spare Employees

13.     In January 2003, UL and the Union agreed to reduce the hourly wages of spare employees to $13.00 per hour in order to enhance UL's ability to compete in its industry. Accordingly, the hourly wage for all spare employees, including drivers, driver's helpers, and warehouse employees, was $13.00 per hour.

14.     Under the terms of the collective bargaining agreement with the Union, "any employee who reports for work as scheduled shall be guaranteed a minimum of eight (8) hours of work, or pay, except where such work is rendered impossible because of fire, flood, utility failure or Act of God, providing the employee accepts the work offered and is able to do the work."  (See Exhibit E, Section 1(d) of Article 13 of the CBA)  Accordingly, if we brought in employees to assist in the middle of a shift, we would be required to pay them for a full eight (8) hours even if they did not actually work eight (8) hours.

15.     In or about September 2004, UL received notice from the MCAD that it dismissed Plaintiff's charge of discrimination for a lack of probable cause.  (<u>See</u> <u>Exhibit F</u>, Dismissal Notice, dated September 1, 2004)

Signed under the pains and penalties of perjury this 6th day of February, 2007

/s/ Peter Tsickritzis
Peter Tsickritzis

## CERTIFICATE OF SERVICE

This is to certify that on this 7th day of February, 2007, I caused a copy of the foregoing to be served upon Plaintiff, Bienvenido I. Lugo Marchant, 19 Grove Street, Brockton, MA 02301, by first class mail, postage prepaid.

/s/ Heather L. Stepler
Jackson Lewis LLP

# EXHIBIT A



## United Liquors Ltd.

*Wholesalers and Importers*

July 15, 2003

Commonwealth of Massachusetts
Dept. of Industrial Accidents
600 Washington St., 7ᵗʰ floor
Boston, Massachusetts 02111

Re:   Bienveniedo Lugo-Marchant          Richard R. Regan
        SS#: 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                        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
        DOI:6/17/03                               7/17/03

To Whom It May Concern:

Enclosed you will find two (2) copies of the Form 101, First Report of Injury, we are filing with you. Could you please stamp, date and initial one copy and return it in the self- addressed envelope we have provided for your convenience.

Thank you in advance for your cooperation.

Sincerely,

Linley Bigney
Warse. Personnel Coord.

Enclosure



DEPOSITION
EXHIBIT
16
12|15

175 Campanelli Drive, PO Box 859219, Braintree, MA 02185-9219
(800) 862-4585

P - ULL/LUGO 0057

FORM 101 

The Commonwealth of Massachusetts
Department of Industrial Accidents – Department 101
600 Washington Street – 7th Floor, Boston, Massachusetts 02111
Info. Line 800-323-3249 ext. 470 in Mass.  Outside Mass. - 617-727-4900 ext. 470
http://www.state.ma.us/dia

| DIA USE ONLY |
| --- |

## EMPLOYER'S FIRST REPORT OF INJURY
## OR FATALITY  WC204- 581 259

THIS FORM MUST BE FILED BY THE *EMPLOYER* IN THE EVENT OF AN INJURY THAT RESULTS IN DEATH
OR FIVE OR MORE CALENDAR DAYS OF TOTAL OR PARTIAL INCAPACITY FROM EARNING WAGES.
*INSTRUCTIONS AND CODES ON THE REVERSE SIDE - Please Print Legibly or Type - Unreadable forms will be returned.*

**EMPLOYEE**

1. Employee's Name (Last, First, MI): Lugo Marchant, Benveneido
2. Home Telephone Number: 508 587-1118
3. Social Security Number: 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
4. Sex: ☒M ☐F

5. Home Address (No., Street, City, State & Zip Code): 19 Grove St. Brockton MA 02301
6. Marital Status: ☐M ☒S
7. No. of Dependents: 0

8. Date of Hire (mm/dd/yyyy):
9. Date of Birth (mm/dd/yyyy): 1-27-69
10. Average Weekly Wage: $13.00/hr. ☐Estimated ☐Actual

**EMPLOYER**

11. Employer's Name: United Liquors Ltd.
12. Federal Tax I.D. Number: 041923720

13. Employer's Address (No., Street, City, State & Zip Code): 175 Campanelli Drive Braintree, MA 02185
14. Employer's Telephone Number: 1-800-862-4585
15. Industry Code (See Reverse Side): 51

16. Workers' Compensation Insurance Carrier and Tel. No. (NOT LOCAL AGENT/ADMINISTRATOR): Wausau Insurance Co. 800 375-5226
17. W.C. Policy Number: 48000039

18. Self-Insured? ☐Yes ☒No    If Yes, Self-Insurer Number:
19. Business Type: ☐Service ☒Wholesale ☐Mfg. ☐Retail ☐Other

**INJURY INFORMATION**

20. DATE OF INJURY (mm/dd/yyyy): 6-17-03    chng WTE 7/4

21. Was Employee Injured on Employer's Premises? ☒Yes ☐No
22. Location of Injury if not on Employer's Premises:

23. FIRST day of Total or Partial Incapacity to Earn Wages (mm/dd/yyyy): 6-18-03
24. FIFTH day of Total or Partial Incapacity to Earn Wages (mm/dd/yyyy):

25. If Employee has Died, Date of Death (mm/dd/yyyy):
26. Source of Injury (Chemicals, Machinery, etc.):

27. Briefly Describe How Injury/Exposure Occurred and Body Part(s) involved:

28. Person to Whom Injury was Reported (list position):
29. Date Reported (mm/dd/yyyy):
30. Date Reported as work related (mm/dd/yyyy):

31. Injury Code(s)        Body Part Code(s)
a. 160   to body part  a. 440
b. 170   to body part  b. 310
c.       to body part  c.

32. Witness(es) to Injury - Give Full Name(s), if none state as such:

33. Has Employee Returned to Work? ☐Yes ☒No
34. Date Employee Returned to Work (mm/dd/yyyy):

35. Employee's Regular Occupation: Whse - Spare
36. Has Employee Returned to Regular Occupation: ☐Yes ☒No

37. EMPLOYER'S Name (SEE INSTRUCTIONS ON REVERSE SIDE): Lindsey Bioney
38. Title: Whse. Personnel Coordinator

39. EMPLOYER'S Signature (SEE INSTRUCTIONS ON REVERSE SIDE):
40. Date Prepared (mm/dd/yyyy): 7-22-03

Disclosure of Social Security Number is voluntary. It will aid in the processing of your report.    Form 101 - Revised 8/2001 - Reproduce as needed.

THIS FORM DOES NOT CONSTITUTE AN EMPLOYEE'S CLAIM FOR BENEFITS UNDER WORKERS' COMPENSATION.

P - ULL/LUGO 0058

**FORM 101**



The Commonwealth of Massachusetts
**Department of Industrial Accidents – Department 101**
600 Washington Street – 7th Floor, Boston, Massachusetts 02111
Info. Line 800-323-3249 ext. 470 in Mass. Outside Mass. - 617-727-4900 ext. 470
http://www.state.ma.us/dia

| DIA USE ONLY |
|---|

## EMPLOYER'S FIRST REPORT OF INJURY
### OR FATALITY WC204- 581259

THIS FORM MUST BE FILED BY THE *EMPLOYER* IN THE EVENT OF AN INJURY THAT RESULTS IN DEATH
OR FIVE OR MORE CALENDAR DAYS OF TOTAL OR PARTIAL INCAPACITY FROM EARNING WAGES.
*INSTRUCTIONS AND CODES ON THE REVERSE SIDE - Please Print Legibly or Type - Unreadable forms will be returned.*

**EMPLOYEE**

1. Employee's Name (Last, First, MI): Lugo-Marchant, Benveneido
2. Home Telephone Number: 508 587-1118
3. Social Security Number: 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
4. Sex: ☒ M  ☐ F

5. Home Address (No., Street, City, State & Zip Code): 19 Grove St. Brockton MA 02301
6. Marital Status: ☐ M  ☒ S
7. No. of Dependents: 0

8. Date of Hire (mm/dd/yyyy):
9. Date of Birth (mm/dd/yyyy): 1-27-69
10. Average Weekly Wage: $ 1300/hr.  ☐ Estimated  ☐ Actual

**EMPLOYER**

11. Employer's Name: United Liquors Ltd.
12. Federal Tax I.D. Number: 041923720

13. Employer's Address (No., Street, City, State & Zip Code): 175 Campanelli Drive Braintree, MA  02185
14. Employer's Telephone Number: 1-800-862-4585
15. Industry Code (See Reverse Side): 51

16. Workers' Compensation Insurance Carrier and Tel. No. (NOT LOCAL AGENT/ADMINISTRATOR): Wausau Insurance Co. 800 325-5226
17. W.C. Policy Number: 48000039

18. Self-Insured? ☐ Yes  ☒ No
If Yes, Self-Insurer Number:
19. Business Type: ☐ Service  ☒ Wholesale  ☐ Mfg.
☐ Retail  ☐ Other

**INJURY INFORMATION**

20. DATE OF INJURY (mm/dd/yyyy): ~~to 11-03~~ 6-17-03    chng WTG 7/22

21. Was Employee Injured on Employer's Premises? ☒ Yes  ☐ No
22. Location of Injury if not on Employer's Premises:

23. FIRST day of Total or Partial Incapacity to Earn Wages (mm/dd/yyyy): 6-18-03
24. FIFTH day of Total or Partial Incapacity to Earn Wages (mm/dd/yyyy): 6-22-03

25. If Employee has Died, Date of Death (mm/dd/yyyy):
26. Source of Injury (Chemicals, Machinery, etc.):

27. Briefly Describe How Injury/Exposure Occurred and Body Part(s) involved:

28. Person to Whom Injury was Reported (list position):
29. Date Reported (mm/dd/yyyy): 7-1-03
30. Date Reported as work related (mm/dd/yyyy): 7-22-03

31. Injury Code(s)    Body Part Code(s)
a. 140  to body part  a. 440
b. 170  to body part  b. 310
c.       to body part  c.
32. Witness(es) to Injury - Give Full Name(s), if none state as such: None

33. Has Employee Returned to Work? ☐ Yes  ☒ No
34. Date Employee Returned to Work (mm/dd/yyyy):

35. Employee's Regular Occupation: Whse - Spare
36. Has Employee Returned to Regular Occupation? ☐ Yes  ☒ No

37. EMPLOYER'S Name (SEE INSTRUCTIONS ON REVERSE SIDE): Linton Bioneu
38. Title: Whse. Personnel Coordinator

39. EMPLOYER'S Signature (SEE INSTRUCTIONS ON REVERSE SIDE):
40. Date Prepared (mm/dd/yyyy): 7-22-03

*Disclosure of Social Security Number is voluntary. It will aid in the processing of your report.   Form 101 - Revised 8/2001 - Reproduce as needed.

**THIS FORM DOES NOT CONSTITUTE AN EMPLOYEE'S CLAIM FOR BENEFITS UNDER WORKERS' COMPENSATION.**

# EXHIBIT B

781.356.4170

Peter N. Tsickritzis
Director Of Operations

United Liquors Limited
175 Campanelli Drive
Braintree, MA 02185

Dear Mr. Tsickritzis:


      I am interested in working at United Liquors Ltd., as before but there is an apparent conflict in the taking your offer. I would like to work at the Maintenance shift or one that does not causes any conflict with what we have under investigation at the MCAD. I will wait for your answer and will expect a change of mind, thanks for your cooperation.

      I consulted with my lawyer and he was unavailable these lasts days but he encouraged me to consult with you a schedule when there is no conflict. Trusting on your usual understanding and kindness I say no more.


Sincerely yours,

Bienvenido I. Lugo-Marchant


Friday, February 27, 2004


copy to George Joseph,
Business Representative
Teamsters 653

James Tye , VP



" 12/15/06

LUGO 00526

# EXHIBIT C

Tuesday, March 09, 2004

US Department of Justice, John Ashcroft
EEOC, Federal Building
Boston, MA 02109

Thomas F. O'Reilly, Attorney General
Commonwealth of Massachusetts
200 Portland Street
Boston, MA 02109

Peter N. Tsickritzis, Director Of Operations
United Liquors Limited
175 Campanelli Drive
Braintree, MA 02185

Dear Mr. Tsickritzis:

I am interested in working at United Liquors Ltd., as before but there is an apparent conflict in the taking your offer. I would like to work at the Maintenance shift or one that does not cause any conflict with what we have under investigation at the MCAD. I recently read a complainant lost his claim at the MCAD for accepting a shift against what he claimed. I will wait for your answer and will expect a change of mind, thanks for your cooperation.

My lawyer was unavailable these lasts days. I am also sending copies of my files to the persons mentioned at the heading. I also contacted some local news papers and the Dept. of Labor; sometimes they know how to handle things. I hope they help you in speeding your decision since they have lots of experience with these situations. Trusting your usual understanding I say no more.

Sincerely yours,

Bienvenido I. Lugo-Marchant

copy to George Joseph,
Business Representative
Teamsters 653

DEPOSITION
EXHIBIT
12
12/15/06

James Tye
781-356-4656 fax

LUGO 00248

# **EXHIBIT D**



**United Liquors** Ltd.

175 Campanelli Drive
P.O. Box 859219
Braintree, Massachusetts 02185-9219

781-348-8000 main
unitedliquors.com

Bienvenido I. Lugo-Marchant
19 Grove Street
Brockton, MA 02301

Dear Mr. Lugo:

I have received your letters dated February 27, 2004 and March 9, 2004 requesting to return to work at United Liquors, Ltd. (the "Company"). As the Company has previously stated, you may return to work as a spare employee but the Company cannot guarantee you a particular position or shift on a daily basis. As you know, in accordance with its agreement with the Union, the Company employs spare employees who call the Company daily to find out if work is available and are assigned positions and shifts on an as-needed basis. Spare employees are not guaranteed work on a daily basis, nor are they guaranteed a particular position or shift.

Should you choose to return to work at the Company as a spare employee, you could decline work on available shifts that conflict with your alleged sincerely held religious beliefs. The Company, however, could not guarantee you work assignments on the shifts of your choice. In addition, if you were to accept work on a shift, you would have to work the entire shift, as is required by Company policy and its agreement with the Union.

Although we do not believe that your return to work would cause a conflict with your MCAD claim, if you have any concerns, we are willing to discuss the issue with you and the MCAD investigator assigned to this case. Please feel free to call me at your convenience if you would like to return to work or would like to discuss this matter further. Further, to the extent that you are represented by an attorney as you have indicated in your letters, I would gladly communicate with him or her regarding this matter if you provide me with your attorney's contact information or have him or her contact me.

Sincerely,

Peter N. Tsickritzis

cc:    Ms. Allison Hope, Investigator
       Massachusetts Commission Against Discrimination
       One Ashburton Place
       Boston, MA 02108

DEPOSITION EXHIBIT

13
12/15/06

LUGO 00255

# **EXHIBIT E**



# AGREEMENT

between

## GENERAL TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF BROCKTON AND VICINITY LOCAL UNION NO. 653

a/f/w

International Brotherhood of Teamsters

a/f/w

AFL/CIO

4-A Hampden Drive
South Easton, Massachusetts 02375

and

## UNITED LIQUORS, LTD.

One United Drive
West Bridgewater, Massachusetts 02379

Covering employees working for
United Liquors, LTD. in the Road
Division and the Warehouse Division

May 1, 2000 to April 30, 2003



## ARTICLE 13

## HOURS OF WORK AND OVERTIME

**Section 1:**

(a)    Five (5) days shall constitute a normal week for all employees from Monday to Friday inclusive and the hours of labor each day shall be worked in uninterrupted succession. All time worked in excess of eight (8) hours per day or forty (40) hours in any work week shall be paid for as overtime at one and one-half times the applicable rate. There shall be no duplication or pyramiding of overtime.

(b)    All hourly paid employees shall have one-half (1/2) hour for lunch. Where employees are required to work more than one (1) hour overtime in the warehouse, they shall be given a twenty (20) minute paid supper period.

(c)    Second Shift - Regularly scheduled second shifts on a forty (40) hour a week basis shall begin no earlier than 2:00 p.m. and employees working on the scheduled second shift shall be paid a thirty (30) cent shift differential. Night warehousemen shall be paid a thirty (30) cent night differential.

(d)    Any employee who reports for work as scheduled shall be guaranteed a minimum of eight (8) hours of work, or pay, except where such work is rendered impossible because of fire, flood, utility failure or Act of God, providing the employee accepts the work offered and is able to do the work. All employees required to report for work on Saturday shall be guaranteed a minimum of eight (8) hours work at time and one-half Such employees ordered to report for work before such starting time shall be paid time and one-half for work prior to the starting time.

**Section 2:**

(a)    A daily time record shall be maintained by the Employer for all his employees. Any Employer who employees five (5) or more employees shall have a time clock and the employee's time shall be computed by the time clock on time cards. Employers with less than five (5) employees who do not have a time clock shall permit employees to keep their own time records.

(b)    Each employee shall punch in his own time card at the start of the day and punch out his own time card at the completion of the day's work at the Employer's place of business.

(c)    Employees assigned to work and/or completing their work away from the Employer's place of business shall be exempt from punching in and out. In the event that any employee is ordered to report at or leave his vehicle at a different place than the usual starting point, such an employee shall be paid transportation expenses back to the starting point. All such traveling time shall be considered as time worked.

(d)    A definite reporting time and working schedule covering all regular employees shall be established by the Employer and the Union. It being understood that no employee shall be required to work in excess of ten (10) hours whether it be by driving or a combination of

# **EXHIBIT F**

LUGO 00273

The Commonwealth of Massachusetts<br>
Commission Against Discrimination<br>
One Ashburton Place, Boston, MA 02108<br>
Phone: (617) 994-6000 Fax: (617) 994-6024

SEP 0 1 2004

## - DISMISSAL and NOTIFICATION of RIGHTS -

| To: | Bienvenido Lugo<br>19 Grove Street<br>Brockton, Ma 02301 | Case: Bienvenido Lugo v. United Liquors Ltd.<br>MCAD Docket Number: 03BEM01651<br>EEOC Number: 16CA301983<br>Investigator: Kristy Case |
|---|---|---|

Your complaint has been dismissed for the following reasons:

[ ]  The facts alleged fail to state a claim under any of the statutes the Commission enforces.

[ ]  Respondent employs less than the required number of employees.

[ ]  Your complaint was not timely filed with the Commission, i.e. you waited too long after the date(s) of the alleged discrimination to file. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[ ]  You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conference, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your complaint. You have had more than 30 days in which to respond to our written request.

[ ]  The Commission's efforts to locate you have been unsuccessful. You have had at least 30 days in which to respond to a notice sent to your last known address.

[ ]  The Respondent has made a reasonable settlement, offering full relief for the harm you alleged. 30 days have expired since you received actual notice of this settlement offer.

[X]  The Commission issues the following determination. Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes a violation of the statutes. This does not certify that the Respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this complaint.

[ ]  Other (briefly state)

### - NOTICE of APPEAL -

If you wish to appeal the dismissal of your complaint and believe that the above stated reason for dismissal is incorrect, you may appeal to this Commission within 10 days after receipt of this notice. You or your attorney must make your appeal of the dismissal in writing to the appeals clerk of this Commission. **Attention: Nancy To.**

All employment complaints, where applicable, were filed by the MCAD with the Equal Employment Opportunity Commission. Our finding, which will be forwarded to its area office, JFK Federal Building, Boston, MA will be given substantial weight provided that such findings are in accordance with the requirements of Title VII of the Civil Rights Act of 1964, the ADEA, and/or the ADA, as amended.

DEPOSITION EXHIBIT

Dorca I. Gomez
Investigating Commissioner

Date    9-1-04

14
12/15/06

MCAD Docket Number 03BEM01651, Dismissal and Notification of Rights with Appeal Rights

Page 1

Cc:

Wilmer Cutler Pickering Hale & Dorr LLP
Attn: Julie Murphy Clinton
60 State Street
Boston, MA 02109

 SEP 0 1 2004

**LUGO 00274**

# MEMORANDUM

**CASE:**        Bienvenido Lugo vs. United Liquors Limited
**DOCKET:**      03 13 01651
**EEOC No:**     16CA301983
**NO. OF EMP.:** 25+
**INVESTIGATOR:** Kristy Case

**RE:**          **Recommendation for Dismissal of the Complaint**

## Issues Investigated

Whether Complainant was discriminated against on the basis of Race, Color (Hispanic), National Origin and Religious Creed (Jehovah's Witness), in violation of Massachusetts General Law 151 B, Section 4, Paragraphs 1, 1A and Title VII of the Civil Rights Act.

## Summary of Allegations

Complainant states that he started working for Respondent on or about June of 1999 as a helper to delivery truck drivers. In March of 2002, Complainant obtained a permit to become a delivery truck driver and approximately one year later received his license. Complainant was a driver for a trial period of two weeks and was then told by warehouse manager, Kevin Kingston to now work in the warehouse because of customer complaints. Complainant claims this resulted in Complainant earning less money for the warehouse position. Complainant then asked warehouse manager, Kevin Kingston for an accommodation for religious purposes (leave early two days a week and Saturday's off) and was denied this request. Complainant also states that he experienced harassment from Fleet Manager, Kenneth Montgomery by being asked about filing accident reports. Complainant asserts that white and Cuban drivers were promoted to full time, and ten Haitians were granted religious accommodations.

Respondent states that Complainant began his employment in June of 1999 as a spare employee. A spare employee calls in every evening to find out whether the Company has work for them for the next day. If they are needed, the Company assigns the employee to a position and shift for the next day. There is no set schedule or job assignment for a spare employee. When Complainant was hired he was repeatedly assigned to the position of driver's helper. As a driver's helper an employee trains to become a driver, as Complainant did. When Complainant had obtained his license to be a commercial truck driver he was put on a two-week trial basis that resulted in many complaints and late deliveries. Complainant was then assigned to the warehouse on the second shift. On March 13, 2003, Respondent asserts Complainant requested to leave early on Tuesday's and Thursday's and not work on Saturday's for religious purposes. Respondent explained to Complainant he could not choose the second shift and leave early for business reasons and that he could call in for the early shift but there was no guarantee he would assigned to an earlier shift. Respondent states that Complainant continued to work the second shift on Tuesday and Thursday's. Respondent avers that the new truck drivers hired were a result of company growth and that Complainant could not fulfill this job so was transferred to the warehouse. Respondent asserts that

Complainant did not hold a sincerely held religious belief because when Complainant worked as a driver he did not request to leave early on Tuesday and Thursday evenings, as well as continued to work these evenings when he returned to the warehouse.

## Summary of Findings

Complainant does not establish a prima facie case for race, color, national origin and religious creed discrimination. In order for Complainant to successfully make a claim for disparate treatment based on his protected class he must be a member of a protected class, adequately performing the essential functions of the job, have an adverse employment action occur and similarly situated employees not in his protected class were treated differently. Complainant identifies his race, color as Hispanic, his religious creed as Jehovah's Witness, but does not state his national origin. Complainant was not performing the essential functions of the truck driver delivery position and there were not any similarly situated employees not in his protected class that received different treatment. The reason for Complainant's demotion to the warehouse position was because his former position as driver's helper is reserved for those trying to obtain their commercial truck driver's license. Since Complainant had obtain his license, and failed to perform his driving duties he was placed in the warehouse position. Complainant's claim that ten new white truck drivers were hired has no merit because Complainant could not perform the essential functions of this job.

Complainants claim of denial of a reasonable accommodation for religious purposes lacks merit. As a spare employee Complainant called in the evening before to find out if there was available work. Complainant had no obligation to accept a shift that would interfere with his religious beliefs. Respondent had legitimate non-discriminatory reasons for denying Complainant leaving early on two shifts as this would result in Respondent having to pay other employees overtime, creating a burden on the Company. Respondent did not require Complainant to work on Saturday's as requested and informed him to call in the evening before his planned day of work and request an earlier shift, if one was available. Complainant states that ten Haitian employees were provided religious accommodations but provides no evidence to support this allegation. Respondent also provides information that Complainant did not choose other open shifts available on days other than Tuesday and Thursday's.

Complainant's allegation that Fleet Manager, Kenneth Montgomery harassed him by asking him about filing accident reports lacks merit. Complainant provides no evidence as to how this question applies to his protected class.

## Conclusion

For the foregoing reasons, it is recommended that the complaint be dismissed for **lack of probable cause.**

_Kristy M. Case_
Kristy M. Case
*Pro Se Investigator*

_Katherine M. Martin_
Katherine M. Martin, Esq.
*(Supervisor)*

LUGO 00276