UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BIENVENIDO I. LUGO MARCHANT,<br>        Plaintiff,<br><br>v.<br><br>PETER TSICKRITZIS, KEVIN<br>KINGSTON and UNITED LIQUORS<br>LIMITED,<br>        Defendants. | Civil Action No. 05 11317 NMG |

## DECLARATION OF KEVIN KINGSTON

I, Kevin Kingston, on oath, depose and state as follows:

1.      I am the Operations Manager at United Liquors Ltd. ("UL").  I have worked for UL since January, 1975 and have held the position of Operations Manager for the past eight to ten years.  I am a resident of Onset, Massachusetts.

2.      UL is a liquor, beer, and wine distributor in Massachusetts and its headquarters is located at 175 Campanelli Drive, Braintree, MA 02185.  In my role as Operations Manager, I oversee the movement of all goods into and out of UL's warehouse.  I also oversee all UL warehouse and road division employees, including spare employees.

### Warehouse and Road Division Employees

3.      All UL warehouse and road division employees are represented by the General Teamsters, Chauffeurs, Warehousemen, and Helpers of Brockton and Vicinity, Local Union No. 653 (the "Union") and work under the terms of a negotiated Collective Bargaining Agreement (the "CBA") between the Union and UL.

4.      Pursuant to the collective bargaining agreement, regular road division employees bid on a position for each workday as a driver or a driver's helper on a particular delivery route. All bidding takes place according to seniority.  Drivers operate UL delivery trucks and deliver

goods to customers. Driver's helpers accompany delivery truck drivers on their delivery routes and assist drivers with their deliveries and other delivery-related tasks.

5.      Following the bidding process, UL fills any remaining job assignments with spare employees. If a spare employee is needed, UL offers the available job assignments to a spare employee, who has the option of accepting or declining the job assignments.

6.      Spare employees are not included on a seniority list and their assignments are based solely on ability, performance and UL's needs. Spare employees do not have set schedules or job assignments. Instead, they are offered various job assignments on an as-needed basis. Spare employees call in to UL on a daily basis to learn whether there are any available job assignments for the following day and they can accept or decline the available job assignments that are offered to them. Spare employees' daily assignments are based solely on UL's needs and their ability and performance. (See Exhibit A, Spare Employee Company Policy, signed by Plaintiff)

### Plaintiff's Service As A Spare Employee

7.      Through my position as Operations Manager, I became familiar with Plaintiff, Bienvenido Lugo Marchant, during the time he worked for UL. Throughout the time Plaintiff worked for UL, he was a spare employee. Accordingly, Plaintiff was offered daily assignments on an as-needed basis.

8.      Beginning in or about June 1999, UL began offering Plaintiff unfilled driver's helper job assignments. As a driver's helper, Plaintiff accompanied delivery truck drivers on their routes and assisted the drivers with their deliveries and other tasks. I supervised Plaintiff when he worked as a driver's helper.

### UL Assisted Plaintiff In His Effort To Obtain A Commercial Driver's License

9.      UL encourages its employees to obtain Commercial Driver's Licenses ("CDL") so they can drive UL's delivery trucks and make deliveries to customers. I encourage all driver's helpers to obtain their CDL so they can drive delivery trucks for UL and allow them to use UL's

delivery trucks to practice driving before taking the CDL driving test.  UL employees accompanied Plaintiff while he was practicing driving.  Further, UL employees accompanied Plaintiff to his CDL tests.

10.    Plaintiff informed me that he obtained his CDL in early 2003, after failing the commercial driving test on numerous occasions.  I congratulated Plaintiff and told him that UL would begin offering him unfilled driver job assignments.

### Plaintiff Did Not Perform Satisfactorily As A Driver

11.    After Plaintiff obtained his CDL, I authorized UL's offering him available driver job assignments for approximately one month, beginning on or about January 29, 2003.  Plaintiff worked approximately 11 driver shifts between that date and the end of February, 2003.

12.    During the time Plaintiff worked as a driver, he did not satisfactorily perform the responsibilities of a driver.  Plaintiff consistently took longer than other drivers to complete his assigned routes and failed to deliver products on time.  UL received a number of complaints from customers regarding Plaintiff's late deliveries.

13.    On February 19, 2003, Plaintiff was involved in an accident while driving a UL delivery truck.  Plaintiff hit a Mitsubishi Montero owned by a woman named Tanya Lucas, while the Mitsubishi was parked.  Plaintiff reported in an accident report form that while "backing in parking spot ULL truck dented vehicle on left plastic covering tire."  (See Exhibit B, United Liquors Ltd. Driver Accident Report Form, dated February 19, 2003).

14.    I was aware that UL paid the car repair fees and rental car fees incurred by Ms. Lucas.  The fees paid by UL totaled approximately $820.27.  (See Exhibit C, Repair Order, dated March 3, 2003)

15.    Based on Plaintiff's failure to timely make deliveries and his inability to complete routes as scheduled, I instructed the UL employee who schedules spare employees to cease offering available driver job assignments to Plaintiff and, instead, to begin offering Plaintiff

available second shift warehouse job assignments.  The second shift generally runs from 2:00 p.m. to 10:30 p.m., but may end earlier or later depending upon the workload.

16.    As a practice, UL generally does not allow spare employees who have their CDLs to work available driver's helper job assignments.  The purpose of this UL policy is to use the driver's helper position as a training position for spare employees who are trying to obtain their CDLs and become drivers for UL.  If a spare employee is unsuccessful as a driver, we then will use him or her in the warehouse.  There are two exceptions to this policy.  If a driver's helper position is unfilled and there is no work for a spare employee who usually performs successfully as a driver, the spare employee might be assigned to the unfilled driver's helper position.  In addition, if UL hires a new spare employee who has a CDL, UL will initially assign the new employee to the position of driver's helper to familiarize the new employee with UL's paperwork and procedures.  Nonetheless, UL will not assign a spare employee with a CDL who is unable to successfully perform as a driver to a driver's helper position.

17.    Subsequently, Plaintiff asked me why he was not being offered available driver job assignments.  I informed Plaintiff that I made this change based upon his poor performance as a driver, including his failure to timely make deliveries, inability to complete routes as scheduled, and customer complaints.

18.    I never received any complaints from customers about Plaintiff's speech.  Nor did I speak with him about his speech.  Plaintiff's English is quite good and I had no difficulty understanding him.

### UL Provided Plaintiff With A Religious Accommodation

19.    On or about March 12, 2003, Plaintiff gave me a letter which made two requests. Plaintiff indicated that he wanted to "finish his shift no later than 12:01AM on Saturdays that being consistent with Exodus 20:8; 'remember the Sabbath day, to keep it holy.'"  (See Exhibit D, letter from Plaintiff, dated March 13, 2003).  Plaintiff also stated that he could not work on Tuesdays and Thursdays because it "creates a conflict between my work, cultural habits and

beliefs." This was the first I learned of Plaintiff's alleged religious beliefs and a request for an accommodation. At no time prior to March 2003, had Plaintiff asked for a religious accommodation.

20.    Plaintiff informed me that he could not work on Tuesday and Thursday evenings because he attends religious classes on those evenings. He suggested that he be allowed to leave early on Tuesday and Thursday so that he could attend his religious classes.

21.    In response to Plaintiff's request regarding Tuesdays and Thursdays, I explained to Plaintiff that UL could not allow Plaintiff to regularly leave several hours early because UL would need to pay for someone to fill in for Plaintiff and, under the CBA, UL would need to pay both the employee who filled in for Plaintiff and Plaintiff for a full eight hour shift. However, I reminded Plaintiff that as a spare employee, he did not have to accept Tuesday or Thursday job assignments.

22.    Plaintiff continued to call in and accept job assignments for second shift positions on Tuesdays and Thursdays. Plaintiff had no obligation to call in or accept these job assignments.

23.    I know that in this action, Plaintiff claims that I said something to the effect that he would be fired if he went to pray. I would not have said that. However, I might have said to Plaintiff that he could be fired if he regularly left his shift early without permission.

24.    To my knowledge, Plaintiff never called UL for any spare employee assignments after his injury in June 2003.

**Plaintiff's Second Accident**

25.    On Friday, April 11, 2003, UL sent out a delivery truck in the afternoon to make last-minute deliveries to customers in order to fulfill their weekend requirements. UL asked Plaintiff, who was working in the warehouse that day, to drive the delivery truck since they did not have another available employee with a CDL. During that delivery, Plaintiff was involved in another accident involving a UL delivery truck. Plaintiff reported that a customer's garage door

closed on top of the UL delivery truck as Plaintiff was leaving the customer's premises. (See Exhibit E, United Liquors Property Damage Report, dated April 11, 2003).

Signed under the pains and penalties of perjury this 6th day of February, 2007

/s/ Kevin Kingston
Kevin Kingston

## CERTIFICATE OF SERVICE

This is to certify that on this 7th day of February, 2007, I caused a copy of the foregoing to be served upon Plaintiff, Bienvenido I. Lugo Marchant, 19 Grove Street, Brockton, MA 02301, by first class mail, postage prepaid.

/s/ Heather L. Stepler
Jackson Lewis LLP

# **EXHIBIT A**



# UNITED LIQUORS LTD.

*Wholesalers and Importers*

ONE UNITED DRIVE, WEST BRIDGEWATER, MA 02379
(617) 323-0500

Date:      March 3, 1998

To:        All Spare Employees

From:      Linley Bigney

Re:        Spare Employee Company Policy


As a Spare or on-call employee, you may be called in for
your first night of work.  After your first night, it is
then your responsibility to call the shipping office each
night for available work.

At the time of the call, you will either be offered work, or
if there is no work available, you will be considered a "lay
off".  However, if you do NOT call in, you will be
considered NOT available for work that day.

If you do not call in for five (5) consecutive days, with no
prior notice of not being available to MARK MCGILL, this
will be considered a voluntary resignation.

To call in for work, please contact MARK MCGILL at:  1 800
862 - 4585 ext.  400.  For the 10:00 PM warehouse shift,
start calling at 6:30 PM until 8:30 PM.  For driver or
helper work, start calling at 8:30 PM until 10:00 PM for the
following day.

Due to your irregular work schedule, United Liquors Ltd. has
provided you with a copy of "How to File for Unemployment
Insurance Benefits".  Please retain the attached copy for
future use.

For our records, we will file a copy of this with your
signature indicating that you were fully informed of our
policy.


_____        _____
United Liquors Ltd.                     Spare Employee X
Whse. Personnel Coord.                  ** SIGN AFTER READING AND
                                        FULLY UNDERSTANDING POLICY


P - ULL/LUGO 0005

# **EXHIBIT B**

UNITED LIQUORS LTD. DRIVER ACCIDENT REPORT

BE COMPLETED AND RETURNED TO WAREHOUSE SUPERVISOR AS SOON AS POSSIBLE

OF ACCIDENT: 2/19/2003    TIME OF ACCIDENT: about 4PM  A.M.  (P.M.)

E DID ACCIDENT HAPPEN: parking    STREET: Washington St    TOWN: JP / Boston

HAPPENED: when backing in parking spot ULL truck dented vehicle on left plastic covering tire

ODY IN OUR TRUCK HURT?    YES    (NO)    IF YES, WHO:

TRUCK WERE YOU DRIVING:    TRUCK#: 5640    PLATE#:

TYPE OF TRUCK WERE YOU DRIVING: (CIRCLE ONE)    SINGLE    DOUBLE

DAMAGE TO OUR TRUCK?    YES    (NO)    IF YES, WHAT?

NAME: B. Lugo    HELPER'S NAME:

ESS - STREET: 14 GROVE ST    TOWN: Brockton    STATE: MA    ZIP: 02___

PHONE #: (508) 587-10__    DATE OF BIRTH: 27 Jan 69    LICENSE #: S 974____ 28

T DID YOU HIT? plastic covering tire    YEAR: 1998    MAKE: Mitsubis__

EL: Montero    PLATE #: 8965 NC    INSURANCE CO. NAME: FIREMANS FUND
                                                                  w-617-77__

R DRIVER AND OWNERS NAME: TANYA LUCAS    PHONE #: H-617-7__

R DRIVER ADDRESS - STREET: 623 PARKER ST    TOWN: BOSTON (Mission H__

GE TO OTHER VEHICLE:

RED PERSON IN OTHER VEHICLE    YES    (NO)    POLICE CALLED    YES    (NO)

ESS NAME(S):

DID YOU REPORT ACCIDENT TO AT WHSE:

PLEASE SIGN AND DATE

VEHICLE #2 UNOCCUPIED @ TIME OF AC___T.

Vehicle repaired @ Mass___

and Paid for by ULL.

(B1)

DEPOSITION
EXHIBIT
20
12/15/0__

P - ULL/LUGO 0025

DID YOU HAVE A HELPER?     (YES)     NO

WHERE WAS YOUR HELPER AT THE TIME OF THE ACCIDENT?     *Out looking for blind spot*

WHAT WERE THE ROAD CONDITIONS?     *Slippery, snow usual after blizzard*

WHAT WAS YOUR RATE OF SPEED?     *0 – 2 MPH*

ALL OF THESE QUESTIONS ARE NECESSARY AND NEED TO BE FILLED OUT COMPLETELY.

A FULL DESCRIPTION OF THE ACCIDENT AND THE DIAGRAM ARE ALSO NECESSARY.

PLEASE RETURN THIS COMPLETED FORM TO CAROL MITCHELL



COMPLETE THE FOLLOWING DIAGRAM SHOWING DIRECTION & POSITIONS OF AUTOMOBILES OR PROPERTY INVOLVED, DESIGNATING CLEARLY POINT OF CONTACT.



GIVE STREET NAMES, DIRECTIONS AND LOCATIONS OF OBJECTS INVOLVED

P - ULL/LUGO 0026

INSTRUCTIONS:
1) Number each vehicle and show direction of travel by arrow
2) Use solid line to show path of each vehicle before accident
3) Show motorcycle or bicycle by  O-O
(4) Show pedestrian by
(5) Show railroad by
dotted line after accident

DID YOU HAVE A HELPER?   (YES)      NO

WHERE WAS YOUR HELPER AT THE TIME OF THE ACCIDENT? *Out looking for blind spot*

WHAT WERE THE ROAD CONDITIONS? *Slippery, snow wind after blizzard*

WHAT WAS YOUR RATE OF SPEED? *0 - 2 MPH*

ALL OF THESE QUESTIONS ARE NECESSARY AND NEED TO BE FILLED OUT COMPLETELY.

A FULL DESCRIPTION OF THE ACCIDENT AND THE DIAGRAM ARE ALSO NECESSARY.

PLEASE RETURN THIS COMPLETED FORM TO CAROL MITCHELL



COMPLETE THE FOLLOWING DIAGRAM SHOWING DIRECTION & POSITIONS OF AUTOMOBILES OR PROPERTY INVOLVED, DESIGNATING CLEARLY POINT OF CONTACT.



GIVE STREET NAMES, DIRECTIONS AND LOCATIONS OF OBJECTS INVOLVED

INSTRUCTIONS:

1) Number each vehicle and show direction of travel by arrow → [ 1 ]   ( 2 ) ←

2) Use solid line to show path of each vehicle before accident → [ 1 ]   dotted line after accident ···· [ 1 ]

3) Show motorcycle or bicycle by →O-O   (4) Show pedestrian by   (5) Show railroad by



P - ULL/LUGO 0027

# **EXHIBIT C**

# //// MOTORS

**Quality Collision Repairs Since 1942**

209 Boston Street ▪ Dorchester ▪ MA 02125 ▪ (617) 436-4422

## REPAIR ORDER 37406

### MATERIAL USED

NAME: TONYA FLUCAS/UNITED LIQUORS

ADDRESS: 623 Dudley ST. Roxbury MA

PHONE NO. 617-708-8600

work: 617-720-4146

| DATE RECEIVED | LICENSE NO. AND STATE | MOTOR NO. | YEAR | MAKE AND MODEL | MILEAGE |
|---|---|---|---|---|---|
| 03-03-03 | | | 1998 | MITS. MONTAN | |

3 DAYS RENTAL ENTERPRISE RENTAL          $129.95

Repair + Refinish Rear Cover (side damage)

Repair LTt Qtr + Refinish
Replace LTt Qtr lolo Mldg

Blend adjacent Tane

_Thomas Yen_

_Tenny Montgomery_

DEPOSITION EXHIBIT 21 12/13/06

| | QUAN. | DESCRIPTION | PRICE |
|---|---|---|---|
| | | | |

| | PRICE |
|---|---|
| SUB-TOTAL | |
| TAX | |
| TOTAL | |
| OUTSIDE LABOR | |
| TOTAL | |

| | |
|---|---|
| BODY LABOR | 214.40 |
| PAINT LABOR | 223.40 |
| MATERIALS | 108.82 |
| PARTS | 137.43 |
| SUBLET (RENTAL) | 129.95 |
| TOW/STORAGE | |
| SUB TOTAL | 813.40 |
| TAX | 6.87 |
| TOTAL | 820.07 |

I HEREBY AUTHORIZE THE ABOVE REPAIR WORK TO BE DONE ALONG WITH THE NECESSARY PARTS

SIGNED

| DATE PROMISED | DATE DELIVERED |
|---|---|
| | |

WE ARE NOT RESPONSIBLE FOR CARS OR ARTICLES LEFT IN CARS OR IN CASE OF FIRE OR OTHER CAUSES BEYOND OUR CONTROL.

# **EXHIBIT D**

To    United Liquors Limited

From Bienvenido Lugo

Re    work schedule


In the interest of working at United Liquors Limited (ULL) I'd like to have my work schedule to the usual or in the worst case scenario to accommodate it to attend some religious instructions. Working on Tuesday and Thursdays is not possible for me (Bienvenido Lugo) because it creates a conflict between my work, cultural habits and beliefs. I hereby request from ULL the aforementioned petition based on the previous sentence and the seniority relation when compared to new workers. There would be a reasonable compensation on workforce not causing undue hardship on ULL.

BL believes the end is near and he needs to be prepared to face it. Attending such regular meetings would equip him better. Hebrews10:24; **"And let us consider one another in order to stir up love and good works not forsaking the assembling of ourselves together, as is the manner of some, and so much the more as you see the Day approaching".** At the same time BL needs to medically take care of his elderly mother following 1Timothy 5:3-4 **"Honor widows who are really widows. But if any widow has children or grandchildren, let them first learn to show piety at home and to repay their parents; for this is good and acceptable before God".** Finishing that shift so late causes a disruption in that treatment. Finally, BL would like to finish his shift no later than 12:01AM on Saturdays that being consistent with Exodus 20:8; **"remember the Sabbath day, to keep it holy".**

ULL has many new employees who can work in that shift and that will be greatly appreciated by BL.


March 13, 2003                            Bienvenido Lugo


LUGO 00204

# **EXHIBIT E**

# UNITED LIQUORS PROPERTY DAMAGE REPORT

### MUST BE RETURNED TO WHS. SUPERVISOR AS SOON AS POSSIBLE

**DATE OF ACCIDENT:** April 11-03    **TIME:** about 5 PM    **A.M.**    **P.M.**

**WHERE DID DAMAGE HAPPEN:**

**ACCOUNT NAME:** ? Boston Hotel ?

**ACCOUNT ADDRESS:** 70 Rowes Wharf    DRAWING of the back of the truck

**CITY AND STATE:** Boston

**TRUCK NUMBER YOU WERE DRIVING:** ? Late truck

**TYPE OF TRUCK (CIRCLE ONE)** (SINGLE)    DOUBLE

**DRIVERS NAME:** R. LUGO    **HELPERS NAME:**

**DRIVERS ADDRESS:** 19 GROVE ST

**CITY AND STATE:** Brockton MA 02301

**DRIVERS PHONE #** (508) 587 - 1018

**DRIVERS DATE OF BIRTH:** Jan 27 - 69

**DRIVERS LICENSE #** S 97 49 49 98

DEPOSITION EXHIBIT
22
12/15/06

**PLEASE GIVE FULL DESCRIPTION OF DAMAGES WERE DONE AND WHAT WAS DAMAGED (IE: FENCE, STAIRS DOOR)**

Hotel opened sliding door used for delivers. At the moment of leaving driver stopped because there were pedestrians crossing by ( STATE LAW SAYS YIELD or be FINED) when pedestrians passed driver drove forward and a scratching noise was heard. Driver believes hotel closed the door on truck as driver waited for pedestrians, then as door closed over the truck the hotel itself created the aforementioned accident. Driver gave its information to security desk.

P - ULL/LUGO 0021



Sequence of events

① Driver approached door and honked at door

② Hotel opened door

③ Pedestrians crossed in front of truck and driver stopped following state law

YIELD TO PEDESTRIANS
STATE LAW    # 100⁰⁰ FINE

④ Hotel closed door on truck (see illustration) causing damage

⑤ Driver gave security info. to hotel

P - ULL/LUGO 0022



LUGO 00180

DID YOU HAVE A HELPER?    (YES)        NO

WHERE WAS YOUR HELPER AT THE TIME OF THE ACCIDENT? *Out looking for blind spot*

WHAT WERE THE ROAD CONDITIONS? *Slippery, snow wind after blizzard*

WHAT WAS YOUR RATE OF SPEED?    *0 – 2 MPH*

ALL OF THESE QUESTIONS ARE NECESSARY AND NEED TO BE FILLED OUT COMPLETELY.

A FULL DESCRIPTION OF THE ACCIDENT AND THE DIAGRAM ARE ALSO NECESSARY.

PLEASE RETURN THIS COMPLETED FORM TO CAROL MITCHELL



MPLETE THE FOLLOWING DIAGRAM SHOWING DIRECTION & POSITIONS OF AUTOMOBILES OR PROPERTY INVOLVED, DESIGNATING CLEARLY POINT OF CONTACT.



GIVE STREET NAMES, DIRECTIONS AND LOCATIONS OF OBJECTS INVOLVED

STRUCTIONS:
) Number each vehicle and show direction of travel by arrow  →  [ 1 ]   ◁ 2 ]  ←
2) Use solid line to show path of each vehicle before accident  →  [ 1 ]  dotted line after accident ···· [ 1 ]
3) Show motorcycle or bicycle by  →  O-O.        (4) Show pedestrian by  →  ⊙·····    (5) Show railroad by  ||||||||



P - ULL/LUGO 0023