UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Bienvenido I. Lugo Marchant<br>Plaintiff<br>v.<br>Peter Tsickritzis, Kevin Kingston,<br>United Liquors Limited et al.<br>Defendants | Civil Action No. 05-11317 NMG |

## MOTION TO QUASH DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT, RULE 56

The Plaintiff hereby respectfully submits this **Motion to Quash the Defendants Motion for Summary Judgement, Rule 56** as to the Plaintiff's complaint. There are myriad of genuine reasons of material fact requiring trial and the Defendants are not entitled to summary judgement.

The Plaintiff supports the US Constitution and is a US citizen. This action arises from the Plaintiff having worked for the Defendants and suffering disparate treatment for having initiated a complaint with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunities Commission ("EEOC"). The Plaintiff believes their actions are a mere unlawful pretext not accepted by any US laws or regulations.

### REASONING FOR DENYING SUMMARY JUDGEMENT

Until this day, the Defendants have ignored a direct order to produce documents authored by the Plaintiff. This record manipulation has been significant in narrowing issues and unmasking even more the Defendants. The Plaintiff has complied with the Court order to submit all his documents and with the depositions, occasionally putting up with an unruly Defendant-Tsickritzis. At all times, the Plaintiff cooperated and sought to meet opposing counsel with no results. The Plaintiff admits that the Defendants, though Jackson Lewis, have attempted to confer with him including the last days on or about 6:45PM to chat for a minute or so. On numerous occasions, the Plaintiff also called, or sent letters getting a negative answer. Other times, opposing counsel called to apparently document a call; little can be said about her good faith.

### DIRECT EVIDENCE

The Plaintiff already gave the Defendants numerous documents containing direct evidence of the main elements of this civil action. As a first example, the Plaintiff gave a copy of his <u>medical plan</u> stating his employer cancelled his coverage days after initiating a MCAD claim.

Second example, the Plaintiff gave <u>all the pay stubs</u> kept since beginning work on or about 1999 to the beginning of 2003 showing minimal if not mercurial reasons for shortchanging in wages and overtime benefits. After asking Defendant-Kingston for an explanation for his acts, the pay stubs reveal retaliatory shortchangings, and overtime benefits denied. There is a <u>corporate memo</u> stating the higher rate the Plaintiff should see as salary for his rank. Also, the Plaintiff included a common

1

overtime adjustment form wherein Defendant-Kingston, after berating him in front of the office, signed "HOLD DO NOT PAY".

Third example, a copy of the Massachusetts Registry of Motor Vehicle CDL record test, showing how many times the Defendants refused to assist him in obtaining a Commercial Driving License ("CDL") license. After obtaining his CDL, the Plaintiff was required to put trucks in an area where "new employees would be trained and promoted" while still denying the Plaintiff a promotion.

Fourth example, the Department of Employment and Training of Massachusetts gave the Plaintiff a copy of his status wherein the Defendants wantonly lie stating he had quit on or about the date when he really had a work related accident for which he was denied insurance/medical treatment. The Defendants, through Hale & Dorr, referred to this at the MCAD when falsely accusing the Plaintiff of not being sincere.

Fifth example, on a separate MCAD claim the Defendants refer to a co-worker fired from work after being suspected of drinking alcohol at work. Said worker (Dexter) gave the Plaintiff a statement stating he was rewarded with libations by among other people, Kathleen Mansfield Human Resources Vice-President, a policy maker of United Group directing the Defendants. In his discussions, he shared documents authored by the Plaintiff and conferred about the Plaintiff and "some Haitians who were bringing claims". Ms. Mansfield was present at the depositions and the conversation of offering the Plaintiff less desirable work.

Sixth example, on a certain afternoon when the Plaintiff went to ULL to submit medical documents he was harassed by Defendant-Tsickritzis who yelled at him and along with other people joined while saying, "you will never be a regular employee because you have a lawsuit against the company". Defendant-Tsickritzis did not correct jokes relating the Plaintiff's ethnicity with working in Maintenance and not being a salesman when the company was growing and needed diverse people.

Seventh example, when employees suffer accidents they are given light duty work but the Plaintiff was denied that for having a MCAD claim. At least on one ocassion, the Plaintiff went to the CDL test with an injured co-worker to sponsor him while the Fleet Manager was unavailable.

### PREVIOUS LITIGATIONS BY THE DEFENDANTS

The Defendant-Tsickritzis confessed having faced a legal action for assaulting an employee he referred to by his stature-age-ethnicity-gender in an unfavorable manner. On or about the time when the Plaintiff had a work related accident Defendant-Tsickritzis told the Plaintiff: *"Ben, take some time off but don't sue the company or anyone. I already have a lawsuit for a **** I assaulted"* then, he self-corrected to say *"allegedly!.. Hale & Dorr is gonna take care of it"*.

On other separate claims, it is noteworthy mentioning that the Defendant-Tsickritzis had a belligerent attitude; reason for which some commented he was not liked much. The Plaintiff was

2

exposed to numerous litigations of the defendants where private issues of some people were discussed in a disrespectful tone. In a posterior work experience, the Plaintiff was told that the Defendants had been in contact with the new employer and they would terminate him from work after finishing medical treatment for fracturing a finger. The Plaintiff was terminated from work in opposition of what the US Supreme Court ruled in relation to "divulging secrets of people who could bring lawsuits".

### MCAD, PREVIOUS ACTIONS

The Plaintiff firmly believes the Defendants prevailed at the MCAD because they effectively articulated false statements. Also, MCAD did not have complete integrity in their conducting their investigation. Specifically, the Plaintiff believes the documents he referred to in the subheading **"DIRECT EVIDENCE"** should have been enough as this is more than enough to prove the Defendants' acts as a pretext. Furthermore, the Defendants did not give the Plaintiff a copy of the evaluations they mention interfering with the Plaintiff 's right "to confront his accusers". Said supervisors and other people misrepresented the requirements the Plaintiff needed to fulfill in order to be promoted while many white drivers were promoted at once. Additionally, the Plaintiff was assured that "if dropping the MCAD claim things could get better for him". As retaliation, the Defendants denied information about the insurance company handling accidents at work.

### DISABILITIES-SPEECH IMPAIRMENT-NATIONAL ORIGIN ACCENT

The EEOC, ADA, and US Courts see a person regarded as disabled, disabled or suffering that limits major life activites as practically the same for claims relating ADA protections and remedies. It is well known that people such Julia Roberts, Bruce Willis, Tiger Woods, Johnny Damon, Marilyn Monroe, Winston Churchill, James Earl Brown, Bill Walton, Carly Simon, King George VI, John Stossel, John Melendez (Jay Leno's Assistant and soon to be his announcer), and Moses are considered as stutterers/stammers. Their speaking skills is not a motive of mocking. Their rate of disfluency or severity is something opposing counsel can not comment on for her lack of medical training or experience unless she can prove otherwise.

*Exodus 4:10 Moses now said to the Lord: "Excuse me, Lord, but I am not a fluent speaker, neither since yesterday nor since before that nor since your speaking to your servant, for I am slow of mouth and slow of tongue." 11 At that the Lord said to him: "Who appointed a mouth for man or who appoints the speechless or the deaf or the clear-sighted or the blind? Is it not I, Jehovah? 12 So now go, and I myself shall prove to be with your mouth and I will teach you what you ought to say."*

About national origin accent, as defined by the EEOC and CRA, that is also evident though some commented at the Defendant that the Plaintiff "sounded like one of the Kennedys' when talking". Defendant- Kingston did not specify when berating and later making a practice to mock the Plaintiff when talking, thus convincing the Plaintiff it was all. The Plaintiff intends to vigorously

3

prove that. The aspect of the work related accident is another valid reason to claim these protections and remedies as the Defendants handled said procedure in a dishonest manner, the Plaintiff was not receiving benefits at the time of beginning the MCAD claim.

### REQUEST FOR RELIGIOUS ACCOMODATION AND FMLA: "do you want to get fired so you can go and pray?"

With the interest of working for the Defendants, the Plaintiff submitted a petition for a religious accommodation that Defendant-Kingston refused to sign and forward to his supervisors. Later on, Defendant-Kingston made it a continual joke to ask the Plaintiff about getting fired and praying. *Hebrews 10: 23 Let us hold fast the public declaration of our hope without wavering, for he is faithful that promised.* [24] *And let us consider one another to incite to love and fine works,* [25] *not forsaking the gathering of ourselves together, as some have the custom, but encouraging one another, and all the more so as YOU behold the day drawing near.*

The US Supreme Court, along with other similar forums and International Courts, have even ruled that people who are decided on harming US and US citizens should be respected in their religious accommodation. With their indifference, the Defendants support harassment and unlawful acts.

Mr. Kingston and Mr. Tsickritzis are very rich men oppressing a very poor man who went the extra mile to spare them from trouble with their supervisors. In said occasions, some customers were not satisfied with the service given to them and the Plaintiff volunteered to help them out. White workers could take personal days with no problem even if it meant slowing the production line.

Although the Defendants can claim the Plaintiff succintly encapsulated a FMLA request in a CRA religious accommodation, they opted for wantonly abusing of the Plaintiff. In fact, on or about Dec12-2005, someone from 75 Park Plaza, Boston called two security officers after the Plaintiff faxed that he wanted to meet with Ms. Ackerstein, esq., as she once invited him to do so. The Plaintiff was parked near the sidewalk with a state issued placard for disabled persons after coming from an FMLA appointment. Countless times, the Plaintiff took care of said responsibilities, as specified in the Bible and according the FMLA.

*1st Timothy 5: 3 Honor widows that are actually widows.* [4] *But if any widow has children or grandchildren, let these learn first to practice godly devotion in their own household and to keep paying a due compensation to their parents and grandparents, for this is acceptable in God's sight.* [5] *Now the woman who is actually a widow and left destitute has put her hope in God and persists in supplications and prayers night and day.* [7] *So keep on giving these commands, that they may be irreprehensible.* [8] *Certainly if anyone does not provide for those who are his own, and especially for those who are members of his household, he has disowned the faith and is worse than a person without faith.*

4

WHEREFORE, the Plaintiff respectfully prays this **Honorable US Court** agrees with this **Plaintiff's Motion to Quash Defendants' Motion For Summary Judgement**. The Plaintiff would like this **Honorable US Court** ordering the Defendants to submit a copy of the documents authored by the Plaintiff and to deny the Defendants Motion for not being sincere. Very resectfully the Plaintiff demands **TRIAL BY JURY**.

Respectfully submitted,

Bienvenido I Lugo-Marchant
*Pro se, in forma pauperis*

### CERTIFICATE OF SERVICE

I hereby certify that on Feb 23, 2007, this document was served upon the defendant's counsel, JACKSON LEWIS, by first class mail, postage paid.

5